**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**MICHAEL KANDIS,**

          **Petitioner,**

**v.**                                   **Civil Action No. 3:16-CV-00135
(GROH)**

**DAVID BALLARD, Warden,
Mount Olive Correctional Center,**

          **Respondent.**

**REPORT AND RECOMMENDATION
THAT 28 U.S.C. §2254 PETITION BE DENIED
AND SUMMARY JUDGMENT BE GRANTED**

### I.  Introduction

On September 20, 2016, *pro se* Petitioner, who is in state custody, filed a Petition for a Writ of Habeas Corpus against Respondent Warden David Ballard, pursuant to 28 U.S.C. § 2254.   ECF No. 1.  Following the entry of an order to show cause entered on September 29, 2016, the Government filed its Motion for Summary Judgment and exhibits thereto on October 26, 2016.  ECF Nos. 6, 11.

### II.  Facts

**A.  Conviction and Sentence**

On September 25, 2013, in the Circuit Court of Ohio County, West Virginia, in case number 13-F-74, Petitioner signed and entered a plea agreement by which he agreed to plead guilty to Counts Three, Four and Five, of the indictment, which all

1

charged the felony of robbery in the second degree, in violation of West Virginia Code § 61-2-12(b).  ECF No. 11-2.  The plea agreement filed on that date provides:

In paragraph 3, that Petitioner "understands that the penalty provided for the felony offense of 'Second Degree Robbery' is confinement in the West Virginia Penitentiary for not less than five (5) nor more than eighteen years."[1]  Id.

In paragraph 4, that Petitioner "recognize[s] and accept[s] that this plea agreement is non-binding upon the Court and that acceptance of the plea and sentencing remain in the sole and exclusive discretion of the Court."  Id.

In paragraph 6, that Petitioner is "free to make any sentencing recommendation he desires" but that the State would make a non-binding recommendation to the Court that the Court sentence Petitioner to three consecutive five-to-eighteen years terms in the penitentiary, for an effective sentence of not less than fifteen nor more than fifty-four years.  Id.

In paragraph 7, that Petitioner "understands that he will not be permitted to withdraw his plea of guilty after the same has been accepted by the Court."  Id.

In paragraph 8, that Counts One and Two of the indictment would be dismissed in consideration for Petitioner's guilty pleas.  Id.

In paragraph 9, that Petitioner "agrees that he is waiving his right to challenge the validity of this plea agreement by direct appeal in state or federal court, to appeal any pre-trial or post conviction rulings of the circuit court, to try and modify the plea

---

[1] West Virginia Code § 61-2-12(b) provides that the penalty for robbery in the second degree is an indeterminate penitentiary sentence of not less than five nor more than eighteen years.

2

agreement in any way, or to otherwise challenge the validity of the plea agreement in any legal proceeding of any nature in any court."  Id.

The final, unnumbered paragraph of the plea agreement provides, "By my signature below, I represent that I have read and understood each of the above ten [ ] paragraphs and that there are no promises or understandings apart from the Plea Agreement expressed herein and that I am entering this Plea Agreement knowingly and voluntarily and without threat or coercion.  I agree to enter my plea on the conditions set forth in this plea agreement document."  ECF No. 11-2 at 4.

The plea agreement, signed by Petitioner, his counsel and state's counsel, was dated September 25, 2013, the same date the plea was entered before the circuit court. The "Plea Order" entered by the circuit court notes that the proposed plea terms were orally placed upon the record and that Petitioner's counsel advised the circuit court that the terms were properly represented.  ECF No. 11-3.  The Plea Order further states that the defendant therein advised the court that he: was the person charged in the indictment; graduated high school and could read and write; understood the plea agreement; had not used any drugs or alcohol within the last twenty-four hours; had never been hospitalized for psychological or mental conditions, nor was he currently being treated for such conditions; had an adequate opportunity to discuss all aspects of his case with his attorney; entered the plea with full knowledge of the terms therein; was not coerced or threatened to enter his plea; understood he could be sentenced to the maximum penalty permitted by the court; and understood that the court had authority to

sentence him up to that maximum penalty, regardless of the plea agreement and recommendations of counsel.  ECF No. 11-3 at 3 - 4.

The Court then reviewed all the rights Petitioner was giving up by pleading guilty. ECF No. 11-3 at 4.  The court then asked Petitioner whether his signature appeared on the written plea agreement, and Petitioner "replied affirmatively that his signature appeared on the written plea agreement," at which time the plea agreement was filed and made part of the record.  Id. at 4 – 5.  Counsel for the state placed upon the record a factual basis for the plea.  Id. at 5.   In response to inquiry by the court, Petitioner agreed that "the factual basis for the plea as set forth by [the state] was accurate but denied threatening to shoot one of the victims," however, he admitted that he "placed the victims in fear of bodily injury during the robberies."  Id.

Thereafter the Court inquired whether Petitioner wished to waive his Constitutional rights and enter pleas of guilty to Counts Three, Four and Five of the indictment consistent with the plea agreement.  Id. at 6.  The Plea Order made seven enumerated findings, regarding Petitioner's waiver of rights including that Petitioner waived "[t]he right to petition for an appeal from any conviction for errors of law" and that Petitioner waived "[t]he right to the assistance or to retain counsel at all stages of this or any appellate proceeding as well as the right to an appointed attorney in the event one is requested and he is determined to be eligible." Id. at 7.  The court further found that Petitioner's pleas of guilty were "made freely, voluntarily, knowingly and intelligently with full knowledge of the consequences of the entry of said pleas." Id. at 8.  Petitioner did not object to any of the court's findings.

4

On November 14, 2013, Petitioner appeared before the court for sentencing. After considering several factors including the arguments of counsel, the circumstances of the three robberies which were separated by several days and thus did not constitute a continuous criminal act, the seriousness of the crimes, Petitioner's prior criminal history, the presentence investigation report prepared by the Probation Department, the LS/CMI[2] evaluation regarding Petitioner's risk factors affecting his likelihood to reoffend, the victim impact statements and the sentencing objectives of punishment, the Court sentenced Petitioner to three consecutive five to eighteen year sentences, for an effective sentence of not less than fifteen nor more than fifty-four years in the penitentiary.[3]   ECF No. 11-5 at 3.

Consistent with the requirements of West Virginia Rule of Criminal Procedure 32(c)(5), after imposing sentence, the court informed Petitioner of his appellate rights, and stated that Petitioner's counsel "can fully explain to you all of your appeal rights and answer any questions that you may have."  ECF No. 11-4 at 20 – 21 of 23.

**B.  State Habeas Corpus Petition**

On September 8, 2014, Petitioner filed a *pro* Petition for habeas corpus in Ohio County Circuit Court in case number 14-C-258, alleging that: (1) he received ineffective assistance of counsel during the plea bargaining phase including at plea entry and

---

[2] Level of Service/Case Management Inventory. West Virginia Code § 62-15A-1(9).

[3] Pursuant to West Virginia Code § 62-12-13(b)(1)(A), an inmate of a state correctional facility is eligible for parole for an indeterminate sentence after serving the minimum term, in this case, where consecutive sentences were imposed, Petitioner will become eligible for parole after serving fifteen years.  Pursuant to West Virginia Code § 28-5-27, such inmates are granted commutation from their sentences for good conduct at the rate of "one day good time for each day he or she is incarcerated," which "shall be deducted from the maximum term of indeterminate sentences.  Accordingly, Petitioner will become eligible for parole after serving fifteen years of incarceration and will discharge his sentence after serving twenty-seven years.

sentencing, specifically that he was counseled to turn down an initial plea offer which would have resulted in a potential minimum indefinite sentence of not less than ten nor more than thirty-six years, if imposed consecutively in part and concurrently in part, with a potential maximum sentence of eleven to forty-one years if all sentences were imposed consecutively, but was instead encouraged by his counsel to accept a later plea offer with a potential minimum sentence of not less than five nor more than eighteen years if sentences were imposed concurrently, and a potential maximum sentence of fifteen to fifty-four years, if sentences were imposed consecutively; and (2) counsel was further ineffective by failing to file a direct appeal following conviction. Petitioner requested therein that he be resentenced "for direct appeal purposes." Petitioner's Losh list[4] waived all but five potential grounds: (1) failure of counsel to take an appeal; (2) unfulfilled plea bargain; (3) ineffective assistance of counsel; (4) severer sentence than expected; and (5) mistaken advice of counsel as to parole or probation eligibility. ECF No. 11-7.

The Petition was denied without a hearing by order entered on March 31, 2015, which order contained findings of fact and applicable law upon which the court decided the matter.  ECF No. 11-8. The grounds for denial were that: (1) Petitioner's guilty plea was entered knowingly and voluntarily, without any evidence to the contrary; (2) Petitioner waived his right to an appeal by entering his guilty plea; and (3) Petitioner expressed his satisfaction with his counsel when questioned by the Court during his plea entry.  Id. at 5.

---

[4] Losh v. McKenzie, 166 W.Va. 762, 277 S.E.2d 606 (1981)(which lists 53 common grounds for habeas corpus petitions, which list is not exhaustive).

**C.  <u>State Habeas Corpus Appeal</u>**

On May 13, 2015, Petitioner filed a motion to file notice of appeal out of time, and a notice of intent to appeal with the circuit court.  ECF No. 11-9, 11-10.  The motion to file out of time was granted on May 29, 2015.  ECF No. 11-11.  On September 24, 2015 Petitioner perfected his *pro se* appeal with the Supreme Court of Appeals of West Virginia in docket number 15-0431, alleging the lower court abused its discretion in denying his petition for habeas corpus.  ECF No. 11-12.  The State Attorney General, acting as counsel for Respondent Warden Ballard, filed a response to the petition on November 4, 2015.  ECF No. 11-13.   Petitioner filed a reply brief on November 18, 2015.  ECF No. 11-14.

The Supreme Court of Appeals denied relief in a memorandum decision issued April 15, 2016.  ECF No.11-15.   That decision cited to a number of supporting facts contained in the record including that: Petitioner's counsel recommended in a July 24, 2013 letter that he accept the initial July 16, 2013[5] plea offer; Petitioner and the State later reached different plea terms included in the September 25, 2013 plea agreement filed with the Ohio County Circuit Court, which permitted Petitioner to argue that the three sentences should be imposed concurrently; the terms of the plea agreement included Petitioner's waiver of the right to challenge the validity of the plea agreement by direct appeal;  at the plea entry hearing on September 25, 2013, the State's attorney stated he would recommend consecutive sentences; the circuit court asked Petitioner if he was aware that if consecutive terms were imposed he would spend a total of fifteen

_____

[5] This July 16, 2013 plea proposal was a renewal of terms which were offered to Petitioner's prior counsel.  Following a substitution of counsel, the initial terms were re-offered to newly appointed counsel in the July 16, 2013 letter.

to fifty-four years in the State's custody; the court reminded Petitioner that the plea agreement was not binding upon the court and when the court asked whether Petitioner understood this, he responded "I do;" the court inquired whether any promises were made to Petitioner, other than those included in the plea agreement, to which Petitioner responded, "No, sir;" the court inquired whether Petitioner's counsel had "fully explained" the plea agreement's terms, to which Petitioner responded "Yes;" when asked if he was "completely satisfied" with counsel's representation Petitioner also responded affirmatively; at the end of the colloquy the court found the guilty pleas were made "knowingly, intelligently, and of his own free will."   ECF No.11-15.   Citing to Asbury v. Mohn, 162 W.Va. 662, 665, 256 S.E.2d 547, 549 (1979), the Supreme Court of Appeals noted that "the right to appeal may be waived," but "[e]ven when a defendant pleading guilty preserves the right to appeal, an appeal in such a case lies 'as to the voluntariness of the guilty plea or the legality of the sentence.' Syl. Pt. 1, State v. Holstein, 235 W.Va. 56, 770 S.E.2d 556 (2015)."   Thereupon, the Supreme Court of Appeals wrote that, "petitioner does not contend that imposition of consecutive sentences is illegal," and "[t]herefore, assuming arguendo, that petitioner did not waive his right to appeal, we find that the only possible ground for an appeal was that his guilty pleas were involuntary."   Id.   The Supreme Court of Appeals noted that "in his July 24, 2013, letter to petitioner, counsel recommended that he accept the July 16, 2013 plea offer, and find that Petitioner's assertion that counsel somehow did not follow up on his recommendation is dubious."   Id. at 4.   The Supreme Court of Appeals concluded that:

> [t]he circuit court asked petitioner whether he was aware that
> if the court ordered that petitioner serve consecutive terms,

he would spend a total of fifteen to fifty-four years in the State's custody. Petitioner responded, "Yeah." Therefore, we determine that the circuit court did not clearly err in finding that there was no evidence to counter its determination at the plea hearing that petitioner entered his guilty pleas "knowingly, intelligently, and of his own free will." Accordingly, we conclude that the circuit court did not abuse its discretion in denying petitioner's habeas petition.

## D. Federal Habeas Corpus Petition

Less than a year after the denial of relief by the Supreme Court of Appeals of West Virginia, on September 20, 2016, Petitioner filed the instant Petition, for federal habeas corpus relief, pursuant to 28 U.S.C. § 2254. He has not previously sought relief in the federal courts in this matter and has exhausted his state remedies.[6]

Petitioner contends in Ground One of his Petition that he was denied his Sixth Amendment[7] right to effective assistance of counsel during the plea bargain process and plea entry, and further that he was denied his Sixth Amendment right to effective assistance of counsel because counsel did not appeal his conviction. ECF No. 1 at 4. Petitioner contends in Ground Two of his Petition that he was denied his Fifth and Fourteenth Amendment rights to due process and Sixth Amendment right to effective assistance of counsel when his counsel did not appeal his conviction, although the sentencing judge advised Petitioner of his appellate rights. ECF No. 1 at 5. Petitioner

---

[6] On March 18, 2014, Petitioner filed with the Ohio County Circuit Court a motion for modification of sentence pursuant to West Virginia Rule of Criminal Procedure 35, which rule requires such motion to be made within 120 days after sentence is imposed. The sentencing hearing occurred on November 14, 2013, however, the sentencing order was not entered until November 26, 2013 (ECF No. 11-5), thus the March 18, 2014 motion was arguably timely filed. After the Rule 35 motion was filed, the matter was appealed to and disposed of by the Supreme Court of Appeals of West Virginia. The Rule 35 remains pending and has never been ruled on.

[7] Petitioner also cites to Amendment V and Amendment XIV in Ground One, however, he does not articulate any violation of either Amendment V or Amendment XIV.

contends in Ground Three of his Petition that he was denied his Fifth and Fourteenth Amendment rights to due process, and Sixth Amendment right to effective assistance of counsel were violated when the circuit court denied him an evidentiary hearing on his State habeas corpus petition.

Respondent contends in his Motion for Summary Judgment that Petitioner has failed to state a claim upon which relief can be granted; has failed to demonstrate that he is entitled to relief; and that this Court may properly dispose of this case as a matter of law based on the completeness of the underlying record. ECF No. 11. In support of his motion, Respondent filed fifteen exhibits regarding the underlying record, and a memorandum of law. ECF No. 11-1 through 11-15; ECF No. 12.

### III.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure, directs that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Tolan v. Cotton, 572 U.S. __, 134 S.Ct. 1861, 1866 (2014). Motions for summary judgment impose a difficult standard on the moving party; for, it must be obvious that no rational trier of fact could find for the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).

However, the "mere existence of a scintilla of evidence in support of the plaintiff's position" will not prevent entry of summary judgment sought by a Respondent. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, in that they create fair doubt rather than encourage mere speculation.  Anderson, 477 U.S. at 248.  It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## IV. Analysis

Petitioner claims he is entitled to relief under 28 U.S.C. § 2254 based on the alleged ineffective assistance of his counsel during plea negotiations and plea entry and because his counsel did not file an appeal from Petitioner's conviction upon his plea. Respondent seeks summary judgment alleging that no issues of material facts are present and that Respondent is entitled to judgment as a matter of law.

**A.    Standard of Review for §2254 Petitions**

A district court must entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. §2254(a).  Petitioner alleges that his Fifth, Sixth and Fourteenth Amendments rights have been violated by the State, thus he presents appropriate habeas corpus grounds for consideration by this Court.

However, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State," 28 U.S.C. §2254(b)(1)(A).  Through his State habeas corpus proceedings, including his unsuccessful appeal to the Supreme Court of Appeals of West Virginia, Petitioner has exhausted his remedies in the State courts of West Virginia.  Accordingly, because Petitioner has exhausted his State judicial remedies, this court may consider the substantive merits of his Petition.[8]

### 1.  Statutory Exceptions Which Permit Issuance of the Writ on Claims Adjudicated on the Merits in State Court.

The statute lists two exceptions which permit issuance of a writ of habeas corpus after an adjudication on the merits in state court:

> An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[8] "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. §2254(b)(2).

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the State court proceeding.

28 U.S.C. §2254(d).  See also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion."  Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir.1999).  Petitioner's claims herein are substantially similar to the claims he presented to the West Virginia Supreme Court of Appeals, although they are articulated differently in his pleadings.[9]  Thus, Petitioner is prohibited from obtaining relief on those claims unless he meets either of the two provisions of § 2254(d)(1) or (d)(2).

### a. The State courts did not issue a decision which was contrary to or involved an unreasonable application of federal law.

A federal court may grant habeas corpus relief pursuant to the "contrary to" clause of 28 U.S.C. § 2254(d)(1) in two circumstances:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a

---

[9] Here Petitioner alleges three grounds support his Petition for the writ of habeas corpus, and that his Fifth, Sixth and Fourteenth Amendment rights were violated as to each ground because: (1) he received in effective assistance of counsel during the plea process, including the failure to file an appeal of the accepted plea; (2) the state court refused to resentence him so that he could directly appeal his sentence; and (3) the state court denied him the writ and an evidentiary hearing regarding his application for the writ.

In the Supreme Court of Appeals of West Virginia, Petitioner alleged two grounds to support his Petition for the writ of habeas corpus, both of which rested on the lower court's abuse of discretion when: (1) the lower court denied him the writ and refused to resentence him for direct appeal purposes; and (2) the lower court denied the writ of habeas corpus based on alleged ineffective assistance of counsel.

> state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000)

(internal citations omitted).  The Fourth Circuit has further interpreted subsection (1):

> to prohibit the issuance of the writ unless (a) the state court decision is in "square conflict" with Supreme Court precedent which is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant Supreme Court precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French,* 143 F.3d 865, 873-74 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.*

Wright v. Angelone, 151 F.3d 151, 156 (4th Cir. 1998).

Moreover, the United States Supreme Court held in Cullen v. Pinholster, 563

U.S. 170, 181–82, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011):

> that review under [U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court.

Accordingly, state law applies to the previously-adjudicated claim on the merits herein, which claim was decided by the Supreme Court of Appeals of West Virginia, and only the record before that court may be relied upon by this reviewing federal court.[10]

A federal court may also grant habeas corpus relief under the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1), "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

Petitioner has not articulated a specific unreasonable application of federal law which occurred in the state proceeding, nor does he allege with specificity that the state court's decision was contrary to federal law, but has more broadly claimed that his Constitutional rights to counsel and due process were violated in his state court criminal proceeding, which violations of rights persisted during his habeas corpus proceedings in state court. However, when the Supreme Court of Appeals of West Virginia considered Petitioner's state habeas corpus appeal on the merits,[11] its memorandum decision

---

[10] Petitioner's case before the Supreme Court of Appeals of West Virginia contained a substantial appendix record including a transcript of the plea colloquy which was substantially quoted in the memorandum opinion issued by that court, and attached as an exhibit to the motion for summary judgment. ECF No. 11-15. In his reply to the motion for summary judgment, Petitioner attempts to rebut these facts by the submission of additional facts through an affidavit of Petitioner himself and three unsworn statements. Respondent herein filed both a reply and a motion to strike, arguing that pursuant to the Supreme Court's holding in Cullen v. Pinholster, 563 U.S. 170 (2011), it is improper for this Court to consider any evidence outside that which was introduced in the state court proceedings.

[11] Even when a state court summarily rejects a claim and does not set forth its reasoning, the federal court reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). However, the federal court must still "confine [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158 (quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)).

denying Petitioner relief cited to a number of facts contained within the record therein. The court found that Petitioner had voluntarily entered his plea and waived his right to appeal therefrom, and that there was "no evidence" to counter the circuit court's finding that the plea was entered knowingly and voluntarily.

The state court's decision is not opposite on a matter of law to any decision of the Supreme Court, nor is the state court's decision contrary to a result in the Supreme Court, while based on facts which are materially indistinguishable from the facts presented there.   Petitioner fails to demonstrate that the state court arrived at a conclusion opposite to that reached by the Supreme Court with respect to any of his claims.  Accordingly, because the decision of the state court is not contrary to, nor does it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court, Petitioner has not established that he is entitled to relief pursuant to 28 U.S.C. §2254(d)(1).

### b.  The State court's decision was not based on an unreasonable determination of the facts.

A federal court may grant habeas corpus relief under 28 U.S.C. § 2254(d)(2) following adjudication on the merits in state court, however, "[t]o establish that habeas relief is warranted on the §2254(d)(2) ground that the state court's decision was based on an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' a Petitioner must rebut by clear and convincing evidence the §2254(e)(1) presumption that a state court's factual findings are correct."[12]   Foster v.

---

[12] 28 U.S.C. §2254 (e)(1) provides: In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

16

Johnson, 293 F. 3d 766, 776 (5th Cir. 2002), cert. denied, Foster v. Epps, 537 U.S.1054, 123 S. Ct. 625 (2002).

The Fourth Circuit in Tucker v. Ozmint, 350 F.3d 433, 439 (4th. Cir. 2003), wrote that:

> To the extent that [petitioner] challenges certain factual findings made by the state court, federal habeas relief is available only if the state court's decision to deny post-conviction relief was "based on an unreasonable determination of the facts." 28 U.S.C. § 2245(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that "a determination on a factual issue made by a State court shall be presumed correct," and the burden is on the petitioner to rebut this presumption "by clear and convincing evidence." Id. § 2254(e)(1).

Accordingly, this Court presumes that the factual findings of the Supreme Court of Appeals of West Virginia were correct. Petitioner has not presented clear and convincing evidence to rebut the presumption that the State court's factual findings were correct. Rather than citing to any portion of the record which the state court considered, as is required by Cullen v. Pinholster, supra, Petitioner instead has presented his own newly-prepared affidavit as well as three unsworn statements from family members to support his allegations. Such affidavits and statements are improper for this Court to consider herein. However, even if the same were considered on their merits, such documents do not reach the level of clear and convincing evidence necessary to rebut the presumption of correctness of the state court's factual findings.

---

determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Because there was no unreasonable determination of the facts, which were determined based upon the pleadings and appendix record presented to the Supreme Court of Appeals, Petitioner has failed to meet his burden to rebut by clear and convincing evidence the presumption of correctness of the factual findings of the State court.  Moreover, Petitioner has failed to even allege that the State court unreasonably determined the facts when analyzing his claims to uphold his conviction.   Thus, Petitioner has not established that he is entitled to relief pursuant to 28 U.S.C. §2254(d)(2).

**B.   Considered on its Merits, Petitioner's Ineffective Assistance of Counsel Claim Does Not Meet the Two-Part Strickland v. Washington Test**

Claims of ineffective assistance of counsel are governed by the two-part analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984), which require that Petitioner show that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 694.   As discussed more fully below, Petitioner has failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness, but even if he had done so, Petitioner has further failed to demonstrate that the result of the proceeding would have been different as a result of such alleged error.

The Supreme Court in Strickland recognized that, "[j]udicial scrutiny of counsel's performance must be highly deferential," and that courts should also "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Id. at 689,

690.   "[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned."  Blackledge v. Allison, 431 U.S. 63, 71 (1977).  However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality."  Id.  "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement."  United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).  Thus, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

Petitioner has made no showing that his counsel's performance fell below an objective standard of reasonableness in relation to either his plea negotiations and plea entry or when counsel did not pursue an appeal of that plea entry based on Petitioner's waiver of his right to do so as a term of the plea.  Furthermore, even if counsel's actions were deemed to fall below an objective standard of reasonableness, Petitioner is unable to demonstrate that the result would have been different. Accordingly, Petitioner's allegation of ineffective assistance of counsel is without merit.

### 1. Counsel's performance met an objective standard of reasonableness in his representation of Petitioner during plea negotiations and plea entry

Petitioner was accused of committing three robberies over a period of three weeks,[13] which were not part of a single continuous criminal act, but were separate and independent crimes.   Additionally, Petitioner was charged with a burglary and conspiracy which offenses occurred on a separate date.[14]  With those five felonious acts committed on four separate dates, counsel first secured a plea offer from the state which he recommended to his client via a July 24, 2013, letter.  Those initial plea terms would have required Petitioner to enter a guilty plea to one count of conspiracy and to two counts of the robbery, with the robbery sentences to be imposed consecutively for a minimum of ten to thirty-six years of incarceration, but with the possibility that the one to five year sentence for conspiracy could be imposed either concurrently or consecutively in the discretion of the court.   ECF No. 11-15 at 2.   Petitioner did not accept those terms, but later reached an agreement whereby he entered a plea to all three robberies but retained the right to argue that the three five-to-eighteen year sentences should be imposed concurrently.   With that agreement, Petitioner risked the possibility that the three sentences could be imposed consecutively.   However, the **possibility** of three concurrent sentences appeared to outweigh the **certainty** of two consecutive sentences.

Petitioner argues that his counsel was ineffective because counsel assured him that the three robbery sentences would be imposed concurrently.   That contention is

---

[13] The robbery charged in Count Three occurred on November 5, 2012, the robbery charged in Count Four occurred on November 16, 2012 and the robbery charged in Count Five occurred on November 25, 2012.  ECF No. 11-1.

[14] These offenses were alleged to have occurred on March 28, 2011.  ECF No. 11-1.

contradicted by the plea agreement (ECF No. 11-2), plea order (ECF No. 11-3) and plea colloquy quoted by the Supreme Court of Appeals in its memorandum decision denying Petitioner's state habeas corpus appeal (ECF No. 11-15).   Paragraph 4 of the plea agreement provides that it "is non-binding upon the Court" and that "sentencing remain[s] in the sole and exclusive discretion of the Court."   ECF No. 11-2 at 3. Paragraph 6 provides that the state will recommend imposition of consecutive sentences and paragraph 7 provides that Petitioner "will not be permitted to withdraw his plea of guilty after the same has been accepted."   Id.   During the plea colloquy Petitioner was repeatedly asked whether he understood the terms of his plea agreement, including that the court was free to impose sentences consecutively and that he faced a maximum potential sentence of fifteen to fifty-four years, and that no promises or assurances were made to Petitioner aside from the plea agreement.   ECF 11-15 at 2.   Petitioner repeatedly confirmed that he understood the potential consequences of his plea.   Petitioner also agreed that he was completely satisfied with his counsel's representation.   Id.

The net result of counsel's plea bargaining efforts on behalf of Petitioner was to reduce his potential maximum indeterminate period of incarceration from seventeen to sixty-nine years, down to fifteen to fifty-four years, with the possibility of a minimum sentence of five to eighteen years.   The fifteen to fifty-four year sentence imposed was the maximum for the three crimes Petitioner pled guilty to, but more importantly, the plea was based on Petitioner's decision to refuse a known minimum sentence of ten to thirty-six years for an unknown but possibly more lenient sentence of half that, just five

to eighteen years.  The State court found that months before the September 2013 plea entry, counsel recommended in writing that Petitioner should accept the ten-to-thirty-six year sentence contained within the initial plea offer, but that Petitioner rejected that plea and sentence.  Despite that recommendation, Petitioner decided to try to convince the court to impose concurrent sentences, but was unsuccessful. ECF No. 11-5 at 1.

Petitioner claims he "accepted" the initial terms offered to him, but his counsel never shared his acceptance with the state.  However, Petitioner never made that claim until after his three separate five to eighteen year sentences were imposed consecutively.  Despite substantial questioning from the circuit court during the plea entry, Petitioner never asserted any "acceptance" of the earlier terms with the longer known minimum sentence until after imposition of the fifteen to fifty-four year sentence. Nothing in counsel's performance in reducing the potential maximum sentence which might be imposed and by arguing for concurrent sentences suggests that his performance fell below an objective standard of reasonableness in regard to his representation during plea negotiations and at plea entry.  Moreover, Petitioner's own representations on the record in state court in response to substantial questioning from the judge during the plea colloquy contradict his assertions made in this proceeding.

Counsel's representation of Petitioner in plea negotiations and plea entry were objectively reasonable.  Despite being faced with a full confession by Petitioner, counsel reduced Petitioner's maximum exposure to incarceration by a period of two to fifteen years, from a potential seventeen to sixty-nine years down to a maximum fifteen to fifty-four years.  Counsel also preserved the right to argue for imposition of concurrent

22

sentences.   Petitioner fails to demonstrate how counsel's actions in that regard were objectively unreasonable, and thus he is unable to meet the first prong of the <u>Strickland v. Washington</u> test for ineffective assistance of counsel.

### 2.  Counsel's performance met an objective standard of reasonableness in his refusal to appeal Petitioner's conviction and sentence

Petitioner alleges that his counsel was ineffective based on counsel's failure to appeal his conviction and sentence, although Petitioner expressly waived his right to appeal in paragraph 9 of his plea agreement.   ECF No. 11-2 at 4.   Such a waiver is widely recognized as permissible, and even desirable to ensure finality of pleas.   The Fourth Circuit does not distinguish between waivers of direct appeal rights and waivers of collateral attack rights and has found that a waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary.   <u>Lemaster</u>, 403 F.3d at 220.   In <u>United States v. Attar</u>, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal."   The Fourth Circuit further wrote that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused."   <u>Id.</u>

However, the Fourth Circuit found that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds.   <u>Id.</u> at 732.   For example, the Court wrote that a defendant, "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race."

Id.  Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations." Id.  West Virginia's courts have also recognized a defendant's right to waive Constitutional rights, including his right to appeal.  In Carrico v. Griffith, 165 W.Va. 812, 818, 272 S.E.2d 235, 239 (1980), the Supreme Court of Appeals, while citing to a number of federal cases,[15] upheld a defendant's right to waive his appellate rights.

Based on these cases, it appears that ineffective assistance of counsel claims after plea entry are barred by a valid waiver of appellate rights unless the proceedings were conducted in violation of a claimant's Constitutional rights.  When reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, a court must first determine whether there is valid waiver which:

> depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately

---

[15] "Once a defendant has been timely and adequately advised of his right to appeal, he may voluntarily, knowingly and understandingly waive that right. See Collier v. Estelle, 488 F.2d 929, appeal after remand 506 F.2d 22 (5th Cir. 1975); U.S. v. Sanders, 464 F.2d 1067 (5th Cir. 1972) cert. denied 409 U.S. 1045, 93 S.Ct. 545, 34 L.Ed.2d 497 (1972); U.S. ex rel. Bolognese v. Brierley, 412 F.2d 193 (3rd Cir. 1969), cert. denied, Bolognese v. Mazurkiewicz, 397 U.S. 942, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970)." 165 W.Va. at 818.

> is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).[16]  Accordingly, if a reviewing court finds that the waiver is valid, any collateral attack including an ineffective assistance of counsel claim related to the plea agreement, is barred by the waiver.  However, such a waiver does not bar a collateral attack or appeal related to imposition of an illegal sentence or plea proceedings conducted in violation of the Constitution.

Examination of the totality of the circumstances in Petitioner's case encompasses a review of the waiver provision in Petitioner's plea agreement, the plea agreement as a whole, the plea colloquy and Petitioner's ability to understand the proceedings, which all demonstrate that Petitioner validly waived his right to appeal.  At the time of his plea and sentencing, Petitioner was 30 years old, a high school graduate, could read and write the English language and had prior experience as a criminal defendant.  While represented by counsel who negotiated at least two separate sets of plea terms, he signed a written plea agreement which clearly stated in paragraph 9 that he waived his right to appeal that plea agreement, or any pre-trial or post-conviction rulings of the court related thereto.  ECF No. 11-2 at 4.  During the plea colloquy Petitioner indicated that he:

---

[16] The unpublished decision  United States v. Morris, No. 07-4223, slip op. (4th Cir. Sept. 13, 2007) indicated that when a court conducted a thorough Rule 11 colloquy and the defendant specifically mentioned he waived the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights.

> understood that if the plea was accepted by the court there would be no trial and that he could be sentenced to the maximum penalty permitted by law.  The [Petitioner] advised the Court that he understood that the Court was able to sentence him as it saw fit regardless of the plea agreement and recommendations of counsel.

ECF No. 11-3 at 3 – 4.  Petitioner also acknowledged that he understood all the terms of the agreement, that his signature appeared on the written plea agreement, that he understood his Constitutional rights, including the right to appeal and that he wished to proceed with the plea and waive his rights.  Id. at 3.  Later in the plea colloquy Petitioner's counsel advised the court that "he was not aware of any meritorious defenses available" to his client."  ECF No. 11-3 at 5.

At the end of the plea colloquy, the court, in compliance with West Virginia Rule of Criminal Procedure 11(d), advised Petitioner of his constitutional rights and of the maximum possible penalty provided by law and further found that Petitioner entered his plea voluntarily, not as the result of force or threats or of promises apart from a plea agreement.  ECF No. 11-3 at 2 – 3, 6 – 7.

Even with his valid waiver of appellate rights, Petitioner is permitted to appeal the imposition of an illegal sentence or any plea conducted in violation of the Constitution. Petitioner fails to make this argument but instead argues that his rights were violated because his counsel assured him that his sentences would be imposed concurrently. This contention is expressly refuted by the plea documents filed, the transcript of the hearing and the plea order entered by the court.  ECF Nos.  11-2, 11-15, and 11-3. Moreover, these claims are not subject to the exceptions to the waiver of rights Petitioner validly made at the time of his plea entry.

26

Provided that the state court did not exceed the limits recognized in United States v. Attar in conducting the plea entry and sentencing, Petitioner's claims of ineffective assistance of counsel asserted herein are barred by the waiver included in his plea agreement.  Petitioner does not suggest that the court failed to conduct the plea entry consistent with Constitutional requirements.  Instead, the plea colloquy and "Plea Order" entered by the state court comport with the requirements of West Virginia Rule of Criminal Procedure 11 and Call v. McKenzie, 159 W.Va. 191, 220 S.E.2d 665 (1975), regarding plea entry.  ECF No. 11-3 11-15.  Additionally, at the sentencing hearing the judge listed the factors which he considered prior to imposing sentence, including that: there were three separate crimes committed on three separate days; each of which involved separate and distinct victims; each of those victims suffered trauma by Petitioner's actions; Petitioner's LS/CMI evaluation indicated he was at high risk to reoffend within one year; and Petitioner's prior criminal history involving a crime of violence. ECF 11-4 at 19 – 20.   None of these factors was impermissible for consideration by the sentencing court which then imposed the maximum sentence available under the plea terms.

Petitioner waived his right to directly or collaterally attack his sentence, provided the court did not exceed the legal maximum sentence.  The imposed sentence was the maximum possible, fifteen to fifty-four years imprisonment, but did not exceed the maximum permitted by law.  Because Petitioner's waiver of his rights to appeal or collaterally attack his conviction and sentence was valid, and there was no violation of

his Constitutional rights that would permit an exception to that waiver, there is no authority to disturb the waiver.

### 3. Even if counsel were deemed to have erred, there is no reasonable probability that the result would have been different

Even if counsel erred in his representation of Petitioner, an appeal in state court on that issue would not have yielded any relief.  In Syllabus Point 1, <u>State v. Deel</u>, 237 W.Va. 600, 788 S.E.2d 741 (2016), the Supreme Court of Appeals quoted its prior holding in Syllabus Point 1 of <u>State v. Lucas</u>, 201 W.Va. 271, 496 S.E.2d 221 (1997), that "'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.'"  <u>See</u> Syllabus Point 1, <u>State v. Booth</u>, 224 W.Va. 307, 685 S.E.2d 701 (2009).  For thirty-five years, West Virginia courts have followed the holding in <u>State v. Goodnight</u>, 169 W.Va. 366, 287 S.E.2d 504 (1982), that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review."  <u>See</u> Syllabus Point 2, <u>State v. Booth</u>, supra.  Thus, even if Petitioner's counsel had appealed his sentence, because the sentence was within the statutory limits and no impermissible factors were considered in sentencing, he would not have obtained relief.

The Fourth Circuit has recognized that in reviewing claims of ineffective assistance of counsel on appeal, "reviewing courts must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'" <u>Bell v. Jarvis</u>, 236 F.3d 149 (2000) quoting <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir.1993).  Consistent with plea term 9, Petitioner's counsel did not file a petition for

appeal following his sentencing.  However, following the directive of <u>Bell v. Jarvis</u>, this court in reviewing that action must accord counsel the presumption that he properly determined that there were no appropriate issues to appeal based on Petitioner's express waiver of his appellate rights, as well as the lack of any other substantive challenge to Petitioner's sentence, as that sentence was within statutory limits and not based on impermissible factors.

Petitioner gave a confession to law enforcement regarding all the crimes charged against him, as noted by the prosecutor during the sentencing hearing.  ECF No. 11-4 at 17:3 – 5.  The admission of Petitioner's confession would likely have resulted in the same, or perhaps a worse result, at trial.  Petitioner has presented no facts which tend to demonstrate that he would have insisted on going to trial, absent his counsel's alleged errors.   Rather, the record in state court suggests Petitioner would have attempted to avoid trial at any cost to avoid admission of a confession to all of the charged crimes, and to preserve the opportunity to argue for imposition of concurrent sentences.   Petitioner's plea to three of the five felony counts filed against him eliminated his exposure to an additional one to five year sentence for conspiracy as charged in Count 1 of the indictment and to an additional one to ten year sentence for burglary as charged in Count 2 of the indictment.  Had Petitioner also been convicted of those offenses, the sentences therefore could also have been imposed consecutively, for an additional two to fifteen years of incarceration.  It is unlikely that even if counsel erred that the result of a trial would have been any different with the admission of such a confession.

Moreover, Petitioner cannot demonstrate that he would have avoided a plea entry and insisted on a trial, but for his counsel's actions.  Petitioner rejected the initial plea offer with a longer mandatory minimum sentence but shorter maximum sentence so that he could attempt to obtain a mandatory minimum sentence of half that initially offered by arguing for concurrent sentences.  The opportunity cost for that ability to argue for the five to eighteen year sentence was the possibility that the maximum sentence would increase.  Petitioner's decision to risk a longer potential sentence for the possibility of a shorter sentence viewed as an opportunity to reduce his incarceration is not unreasonable.  Petitioner fails to demonstrate that he would not have made the same choice absent his counsel's alleged error.

**C.    Petitioner was Properly Afforded an Omnibus Habeas Corpus Hearing Under State Law**

Petitioner also claims that he was improperly denied an evidentiary hearing to explore these issues of the alleged ineffective assistance of his counsel.  The Supreme Court of Appeals of West Virginia held in *Syllabus Point 1* of <u>Losh v. McKenzie</u>, 166 W. Va. 762, 277 S.E.2d 606, (1981):

> An omnibus habeas corpus hearing as contemplated in W. Va. Code, 53-4A-1 et seq. (1967) occurs when: (1) an applicant for habeas corpus is represented by counsel or appears pro se having knowingly and intelligently waived his right to counsel; (2) the trial court inquires into all the standard grounds for habeas corpus relief; (3) a knowing and intelligent waiver of those grounds not asserted is made by the applicant upon advice of counsel unless he knowingly and intelligently waived his right to counsel; and, (4) the trial court drafts a comprehensive order including the findings on the merits of the issues addressed and a notation that the defendant was advised concerning his obligation to raise all grounds for post-conviction relief in one proceeding.

Consistent with state law, Petitioner was afforded an omnibus habeas corpus hearing in state court because: (1) as part of his plea he knowingly and intelligently waived his right to counsel for any appellate proceeding (ECF No. 11-3 at 7 – 8); (2) the trial court in its review of the state *pro se* habeas corpus petition addressed all the standard issues of relief (ECF Nos. 11-6, 11-7, 11-8) and the Supreme Court of Appeals addressed those same issues in the appeal thereof (ECF Nos. 11-10, 11-11, 11-12, 11-13, 11-14, 11-15); (3) Petitioner's *pro se* Losh list waived 48 grounds and reserved five grounds for review (ECF No. 11-7); and (4) the trial court drafted a comprehensive order denying relief (ECF No. 11-8) and the Supreme Court of Appeals likewise drafted a comprehensive memorandum decision denying relief (ECF No. 11-15).

Critically, pursuant to the holding of Losh v. McKenzie, an "omnibus habeas corpus hearing" does not necessitate an evidentiary hearing.  Further, Rule 9 of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia provides in part that, "[i]f the petition is not dismissed at a previous stage in the proceeding, the circuit court, after the answer is filed, shall, upon a review of the record, if any, determine whether an evidentiary hearing is required."  Accordingly, Petitioner's argument that his Constitutional rights were violated when he was denied an evidentiary hearing fails on the basis that he was accorded an omnibus habeas corpus hearing, which does not necessitate an evidentiary hearing to comport with law.

**D.     The Respondent is Entitled to Summary Judgment.**

A thorough review of the uncontroverted facts clearly demonstrates the lack of any genuine issues of material fact and that Respondent is entitled to summary

31

judgment as a matter of law.  The uncontroverted facts here are that: Petitioner was represented by counsel in state court when he was charged with five felonies, including three counts of second degree robbery; two successive attorneys were offered initial plea terms for Petitioner, and shared the same plea terms with him; the second of those attorneys, who represented Petitioner through the plea entry and sentencing, wrote a letter to Petitioner recommending that he accept those initial plea terms which would have required Petitioner to serve a minimum indeterminate sentence of not less than ten nor more than thirty-six years up to a maximum indeterminate sentence of not less than eleven nor more than forty-one years; Petitioner later entered a different plea which permitted him to argue for concurrent indeterminate sentences of not less than five nor more than eighteen years, but which had the potential to be imposed consecutively for an indeterminate sentence of not less than fifteen nor more than fifty-four years; a term of Petitioner's plea was that he agreed to waive his right to challenge the validity of the "plea agreement by direct appeal in state or federal court, to appeal any pre-trial or post conviction rulings of the circuit court, to try and modify the plea agreement in any way, or to otherwise challenge the validity of the plea agreement in any legal proceeding of any nature in any court"; at plea entry the circuit court asked Petitioner whether he was aware if the court imposed consecutive sentences he would be sentenced to fifteen to fifty-four years in the State's custody, to which Petitioner responded, "Yeah" (ECF No. 11-5); the circuit court reminded Petitioner that because the plea agreement was non-binding, the court "may impose whatever legal sentence it determines appropriate notwithstanding any recommendations made by either of both of

the attorneys," after which the circuit court asked Petitioner if he understood this, Petitioner answered "I do, "(Id.); the circuit court inquired whether any promises were made to Petitioner "in order to get you to enter into this plea agreement, other than the promises contained within it?," to which Petitioner responded, "No, sir," (Id.); when asked whether he was "completely satisfied" with his lawyer's representation, Petitioner advised the circuit court that he was; the circuit court found that Petitioner's plea was entered knowingly and voluntarily; Petitioner was sentenced to three consecutive indeterminate terms of five to eighteen years, resulting in the fifteen to fifty-four year sentence the court had advised him was possible at plea entry; at the conclusion of the sentencing hearing, the circuit court, acting in compliance with West Virginia Rule of Criminal Procedure 32(c)(5), advised Petitioner of his appellate rights; Petitioner directed his counsel to appeal his conviction and sentence, even though he had waived his right to do so; counsel did not file an appeal; the sentence imposed by the circuit court was within statutory limits; Petitioner's *pro se* Petition for a writ of habeas corpus filed in the circuit court was denied; Petitioner appealed that denial to the Supreme Court of Appeals of West Virginia, which court issued a memorandum decision affirming the lower court's ruling; both the circuit court and the Supreme Court of Appeals found that Petitioner's plea was entered knowingly and voluntarily; Petitioner has attempted to submit additional factual information to this court for consideration; and this court has considered only the record presented in state court.

These facts are uncontroverted by anything other than the bare claims of Petitioner.[17]   Accordingly, there are no genuine issues as to any material facts herein. Petitioner has failed to state a claim upon which relief can be granted and has failed to demonstrate he is entitled to relief.   The applicable law demonstrates that Respondent is entitled to judgment as a matter of law.

## V.  <u>RECOMMENDATION</u>

Based upon a review of the record, the undersigned recommends that the Court enter an Order which **GRANTS** Respondent's motion for summary judgment (ECF No. 11), and **DENIES WITH PREJUDICE** Petitioner's §2254 Petition for habeas corpus (ECF No. 1), which should thereafter be dismissed from the docket.

Further, the undersigned recommends that Respondent's Motion to Strike (ECF No. 20) be **GRANTED** as to Petitioner's Response in Opposition to Respondent's Motion for Summary Judgment (ECF No. 18) because the Response contains records which were not part of the State court record.   The undersigned also recommends that Petitioner's pending Motion, styled as an Injunction (ECF No. 22), to hold an evidentiary hearing and to be appointed counsel be **DENIED as moot.**

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections, as provided by rules of court.   A copy of any objections shall also be submitted to the United States District Judge.   Failure to timely file objections to this

---

[17] The unsworn statements of Petitioner's family members submitted in response to the motion for summary judgment are not part of the record below which this Court may consider.

recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

DATED:     April 27, 2017


ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE